The State, ex rel. Leis, Pros. Atty., et al., *v.* Clark et al.

[Cite as State, ex rel. Leis, v. Clark (1978),
53 Ohio St. 2d 101.]

(No. 77-1214—Decided February 15, 1978.)

*Mr. Leonard Kirschner,* assistant prosecuting attorney, for relators Mr. Simon L. Leis, Jr., prosecuting attorney, and Judge Robert S. Kraft.

*Mr. William J. Brown,* attorney general, and *Mr. Allen P. Adler,* for respondents members of the Ohio Parole Board; Mr. George F. Denton, Director of the Ohio Department of Rehabilitation and Correction; Mr. R. E. Giannetta, Chief of the Division of Parole and Community Services; and Mr. John W. Shoemaker, Chief of the Ohio Adult Parole Authority.

HERBERT, J. Relators pray that this court issue an alternative writ of mandamus directing respondents to set aside the parole given Harris, to comply with R. C. 2967.-12, and to set aside the paroles of all other unknown and unnamed defendants or respondents tried in Hamilton County in which the Ohio Parole Board and its members granted parole absent notice to the prosecuting attorney and to the appropriate common pleas court judge in Ham-

ilton County.[1] Respondents make no challenge to the standing of relators to bring this action. *Perkins* v. *Stockert* (1975) 45 Ohio App. 2d 211, 212, 343 N. E. 2d 340; *Oklahoma* v. *United States Civil Service Commission* (1947), 330 U. S. 127, 134; *State, ex rel. Lee, v. Snowden* (1972), 263 So. 2d 205; *Louisiana* v. *Train* (1975), 392 F. Supp. 564, 566.

The writ of mandamus will issue only (1) where relator establishes a clear legal right to the relief for which he prays, (2) where respondent is under a clear legal duty to perform the act demanded, and (3) where no plain and adequate remedy exists in the ordinary course of the law. *State, ex rel. Pressley, v. Indus. Comm.* (1967), 11 Ohio St. 2d 141, 228 N. E. 2d 631; *State, ex rel. National City Bank,* v. *Bd. of Education* (1977), 52 Ohio St. 2d 81, 369 N. E. 2d 1200.

R. C. 2967.12 provides, in relevant part:

"At least three weeks before the adult parole authority recommends any pardon or commutation of sentence, or grants any parole, notice of the pendency of such matter, setting forth the name of the person on whose behalf it is made, the crime of which he was convicted, the time of conviction, and the term of sentence, *shall* be sent to the prosecuting attorney and the judge of the court of common pleas of the county in which the indictment against the convict was found." (Emphasis added.)

G. C. 2211-8, a statutory forerunner of R. C. 2967.12, provided, in relevant part (114 Ohio Laws 592):

"At least three weeks before the board of parole

---

[1]Relators declare they have reason to believe that Harris was not the only defendant released absent notice to relators; the identities and, seemingly, the number of those supposed other defendants is unknown. Respondents, however, solely address the issue of Harris' release.

Given the heavy burden stated in *State, ex rel. Pressley, v. Indus. Comm.* (1967), 11 Ohio St. 2d 141, 228 N. E. 2d 631, and *State, ex rel. National City Bank,* v. *Bd. of Education* (1977), 52 Ohio St. 2d 81, 369 N. E. 2d 1200, upon parties seeking the writ of mandamus, relators' speculative allegations concerning purported defendants are not efficacious. Hence, only Harris' parole will be considered in this cause.

104

grants any parole or recommends any pardon or commutation of sentence, notice of the pendency of such matter, setting forth the name of the person on whose behalf it is made, the crime of which he was convicted, the time of conviction, [and] the term of sentence, *shall* be sent to the prosecuting attorney and the judge of the court of common pleas of the county in which the indictment against the offender was found; provided, however, that where there is more than one such judge, then the notice shall be sent to the presiding judge of the county." (Emphasis added.)

This court repeatedly has declared that the term "shall" in a statute must be construed as imposing a mandatory duty unless there appears the clear and unequivocal legislative intent that it receive a meaning other than its ordinary one. *State, ex rel. Ewing,* v. *Without A Stitch* (1974), 37 Ohio St. 2d 95, 103, 307 N. E. 2d 911, appeal dismissed 421 U. S. 923; *Malloy* v. *Westlake* (1977), 52 Ohio St. 2d 103, 106, 370 N. E. 2d 457.

Attorney General John W. Bricker, in 1933, offered this interpretation of G. C. 2211-8: "A prisoner committed to the Ohio Penitentiary to serve a naught to thirty year sentence for the violation of a statute which does not fix a minimum term of imprisonment is eligible for parole at any time after his commitment to the Ohio Penitentiary but such prisoner cannot be released from confinement on parole by the Board of Parole until the provisions of Section 2211-8, General Code, have been met." 1933 Ohio Atty. Gen. Ops., Vol. 1, 184, No. 160.

Attorney General Bricker, at page 186, reiterated: "It is apparent on a reading of Section 2211-8 that the Board of Parole is required to give notice to the prosecuting attorney and the judge of the common pleas court of the county in which the prisoner was indicted and convicted, at least three weeks before the Board of Parole grants a parole or recommends the pardon or commutation of sentence of a prisoner * * *."

The Bricker language was quoted approvingly in 1939 by Attorney General Thomas J. Herbert. 1939 Ohio Atty. Gen. Ops., Vol 3, 2424, 2431, No. 1621.

Respondents, however, aver that the revocation of parole in the instant cause could violate parolee Harris' federally protected constitutional rights. Respondents rely primarily upon *Morrissey* v. *Brewer* (1972), 408 U. S. 471.

In *Morrissey*, certiorari was granted to determine whether the Due Process Clause of the Fourteenth Amendment requires that a state afford an individual some opportunity to be heard prior to the revocation of his parole. The Supreme Court determined that there must be an opportunity for a hearing, if it is desired by the parolee, prior to a final decision on the revocation of his parole by a parole authority. At such a hearing, the parolee must be afforded the opportunity to demonstrate, if he is able, that he did not violate the conditions of his parole, or, if he did, that mitigating circumstances suggest that the violation does not warrant revocation. *Morrissey, supra,* at pages 472 and 487-88. It should be noted that *Morrissey* involved a valid parole, revoked because of an alleged violation of its terms.

In the case at bar, Harris never achieved a valid parole and no effort is made to accuse him of violating the terms of a parole. Given the plain language of R. C. 2967.-12, notification under that section is an indispensible condition precedent to the receipt of a valid parole.

Respondents deny that R. C. 2967.12 is a mandatory provision; they protest that nothing therein indicates why the notice is required to be given. But our determination today follows the logic of *Morrissey*. In the course of outlining why due process requirements in general apply to parole revocation, the Supreme Court explained: "The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person." *Morrissey, supra,* at page 482. It is to insure precisely such informed evaluations in this state that R. C. 2967.12 must be applied.

Respondents submit that the complaint in mandamus will not lie in the instant cause because it seeks to compel an act already performed. Respondents suggest that re-

lators cannot provide the Parole Board with additional facts or statements of opinion not already known to the board, so that mandamus here would simply force the board to consider the same matter a second time.

Relators, however, have not filed a prayer for a writ of mandamus to order the Parole Board to award a parole already granted; they want set aside the parole improperly given without notice, and want dispatched the notices mandated by R. C. 2967.12. Further, relators allege that there are numerous facts relevant to Harris' parole of which the board was ignorant and that the board acted upon a report erroneous in many respects. If relators' version of the facts is correct, careful compliance with R. C. 2967.12 never was more imperative than in this controversy.

Respondents note that pursuant to R. C. 2731.01,[2] mandamus is a writ commanding the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station; they add that the Ohio Parole Board enjoys exclusive authority in matters dealing with parole determinations under the provisions of R. C. 5149.10.[3] Respondents Denton, Giannetta and Shoe-

---

[2]R. C. 2731.01 provides:

"Mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person commanding the performance of an act which the law especially enjoins as a duty resulting from an office, trust, or station."

This court may or may not agree with what the General Assembly has prescribed with relation to the writ of mandamus. However, it is unnecessary to a resolution of the instant cause to perpetuate a view that considers a statute to be the "authority" by which this classic writ subsists in this court or in courts of appeal. *State, ex rel. Halak,* v. *Cebula* (1977), 49 Ohio St. 2d 291, 294, 361 N. E. 2d 244 (concurring opinion); *Stahl* v. *Shoemaker* (1977), 50 Ohio St. 2d 351, 354, 364 N. E. 2d 286.

[3]R. C. 5149.10 provides, in relevant part:

"The chairman [of the parole board] * * * shall transmit all determinations for * * * parole to the chief of the adult parole authority. Such parole determinations shall be final, and not subject to review or change by the chief."

maker, therefore aver that since they have no duties speci- ally enjoined by law to grant or set aside paroles, or to notify anyone of the pendency of a parole, they should be dismissed as parties to the instant action. We agree and they are dismissed as parties respondent herein.

The writ of mandamus is allowed.

*Writ allowed.*

O'NEILL, C. J., CELEBREZZE, SWEENEY and LOCHER, JJ., concur.

W. BROWN, J., concurs in the syllabus only.

P. BROWN, J., dissents.

LOCHER, J., concurring. I concur in the opinion for the reasons expressed therein and for a further and more basic justification not heretofore enunciated. When felons are granted parole without adherence to the statutory procedures of R. C. 2967.12, a needless risk is placed upon each individual in our society. An obvious intent of the General Assembly to safeguard the community can not and should not be expunged from the system of granting parole.