[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 54.]

THE STATE EX REL. DETERS, PROS. ATTY., *v*. WILKINSON, DIR., ET AL.

[Cite as *State ex rel. Deters v. Wilkinson*, 1995-Ohio-79.]

*Criminal procedure—Parole—For purposes of R.C. 2967.12(C), the hearing in which full Parole Board considers and decides whether to grant parole is the hearing which is subject to being continued—Notice requirement of R.C. 2967.121 not limited to aggravated felonies committed after July 1, 1983.*

1.  For purposes of R.C. 2967.12(C), the hearing in which the full Parole Board considers and decides whether to grant parole is the hearing which is subject to being continued.

2.  The notice requirement of R.C. 2967.121 is not limited to aggravated felonies committed after July 1, 1983.

(No. 94-2061—Submitted January 10, 1995—Decided April 19,1995.)

IN MANDAMUS.

———————————

{¶ 1} The Ohio Adult Parole Authority ("APA" or "authority") notified relator, the Hamilton County Prosecuting Attorney, that a release hearing for convicted murderer Ricardo Woods would be held "on or after June 6, 1994." By a letter dated May 25, 1994, relator's office acknowledged receipt of the notice, advised the authority of its continued opposition to the parole, and attached, incorporating by reference, past letters written by relator's office. On June 7, 1994, a panel of the respondent Ohio Parole Board ("board") met to review the parole. The panel consisted of a member of the board and a hearing officer. The panel made no recommendation, but forwarded the case to the full board for decision. When the panel forwarded the case to the full board, relator's May 25 response was not included in the file. Previous letters from relator's office, however, were in the file. On June 17, 1994, the full Parole Board voted to release Woods on parole. The

APA did not give notice to relator of Woods' release from confinement on September 2, 1994, as required by R.C. 2967.121.

{¶ 2} On September 26, 1994, relator filed a complaint for a writ of mandamus to compel respondents to revoke the parole and comply with: (1) R.C. 2967.12(C), regarding a notice of a "continued" hearing; and (2) R.C. 2967.121, requiring notice to prosecuting attorneys before a prisoner is released on parole. This court allowed an alternative writ and set a briefing schedule. Woods filed a motion to intervene, which this court granted. Relator filed a motion for judgment on the pleadings, which is hereby denied.

———————————

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, *William E. Breyer* and *Philip R. Cummings*, Assistant Prosecuting Attorney, for relator.

*Betty D. Montgomery*, Attorney General, and *Charles L. Wille*, Assistant Attorney General, for respondents.

*H. Fred Hoefle,* for intervenor respondent.

———————————

**COOK, J.**

{¶ 3} This case presents two issues involving statutes prescribing notices from the Ohio Adult Parole Authority to county prosecutors attendant to paroling an inmate. The first is whether, in this case, Woods' "hearing on * * * parole" was "continued to a date certain," as contemplated in R.C. 2967.12(C), thereby necessitating an additional notice of further parole consideration. We answer that question in the negative. The second is whether R.C. 2967.121 requires the APA to notify of the impending release of an inmate convicted of an aggravated felony when such inmate's crime was committed before the effective date of the law which established an "aggravated felony" as an offense classification in Ohio. We answer that question in the affirmative.

I

**{¶ 4}** The statute that controls the first issue is R.C. 2967.12.  It states:

"(A) * * * [A]t least three weeks before the adult parole authority * * * grants any parole, notice of the pendency of the * * * parole * * * shall be sent to the prosecuting attorney * * * of the county in which the indictment against the convict was found.

"* * *

"(C)  When notice of the pendency of any * * * parole has been given as provided in division (A) of this section, and *hearing on the * * * parole is continued to a date certain*, notice of the further consideration of the * * * parole shall be given by mail to the proper * * * prosecuting attorney at least ten days before the further consideration."  (Emphasis added.)

**{¶ 5}** The parties agree that a violation of  R.C. 2967.12 is sufficient to invalidate a release of an inmate and warrants the issuance of a writ of mandamus to enforce the mandatory notice requirements of  R.C. 2967.12. *State ex rel. Leis v. Clark* (1978), 53 Ohio St. 2d 101, 7 O.O.3d 183, 372 N.E.2d 810.  The parties also seem to agree that the APA fulfilled the requirements of R.C. 2967.12 (A). Accordingly, relator's right to relief hinges on whether a notice was required under R.C. 2967.12 (C).  The additional notice under subdivision (C) is triggered when the "hearing on the * * * parole is continued to a date certain."

**{¶ 6}** We review the cause under the standard followed in *State ex rel. Myers v. Chiaramonte* (1976), 46 Ohio St.2d 230, 75 O.O.2d 283, 348 N.E.2d 323. When an asserted legal right is based on a statutory provision, the relator must demonstrate that the statute, as applied and interpreted, gives rise to the requisite clear legal right.

**{¶ 7}** Relator's position on this issue is best gleaned from his affidavit.  It states in pertinent part:

"In May, 1994, I received notice of a parole hearing for Ricardo Woods scheduled for June 6[*sic*], 1994.  This notice was sent to me pursuant to R.C.

2967.12(A). I responded with a letter opposing release. * * * A parole hearing for Ricardo Woods was held on June 6, 1994. At that time, the hearing was continued to a date certain, June 17, 1994. * * * I was not given notice of the June 17, 1994 hearing, contrary to the provisions of R.C. 2967.12(C)."

{¶ 8} Respondents contend that there was only one hearing on Woods' parole—the meeting of the full Parole Board, which granted the parole on June 17. According to respondents, panels consisting of a member of the board and at least one hearing officer regularly are convened, as was done in this case on June 7, 1994, to review the inmate's record and make a recommendation to the full Parole Board. The meeting where the full board considers and decides whether to grant parole is the hearing which is subject to being continued, not the panel review. Therefore, respondents argue, since Woods was granted parole by the full Parole Board on June 17, 1994, without a continuance to a date certain for further consideration, relator can establish no right to an additional notice.

{¶ 9} A review of the applicable sections of the Revised Code, the Ohio Administrative Code, and the record submitted by relator supports respondents' view on this issue.

{¶ 10} Ohio Adm.Code 5120:1-1-11 is instructive on the roles of parole panels and the Parole Board:

"(C) The hearing * * * may be conducted for the purpose of making a recommendation for or against release to the Parole Board by a panel consisting of one or more members of the Parole Board and one or more Parole Board hearing officers as designated by the Chairman of the Parole Board.

"* * *

"(F) Following a release hearing, if the inmate is present and a *decision is made by the Parole Board*, * * * the decision * * * shall be communicated immediately * * *.

4

"(G) In the event the *decision of the Parole Board* is to deny release of an inmate * * *." (Emphasis added.)

{¶ 11} Although relator avers in his affidavit that he received notice of a *parole hearing* scheduled for "June 6, 1994," relator's Exhibit A notifies him of a *release hearing* to be held on or after June 6, 1994. This notice complies with division (A) of the statute. Division (A) does not mandate that a prosecuting attorney be notified of a hearing date, but rather that the prosecutor be sent notice of "pendency of * * * parole." The statute times the notice to precede (by three weeks) the "granting of parole" as opposed to timing it to precede a hearing date. Thus, the notice of the pendency of parole for inmate Woods was not notice of a parole hearing date of June 6, 1994.

{¶ 12} On June 7, 1994, according to the respondents' affidavits, unchallenged by the relator, a panel of the Parole Board completed a "Parole Candidate Evaluation" of inmate Woods with no recommendation to the board and no notation by the panel that the matter was "continued to a date certain." No notation thereon specifies that June 17 was the next date for consideration. Nothing in the affidavit of William Hudson, one of the panel members, supports relator's contention that the panel continued the hearing to June 17. Hudson's affidavit is the only evidence submitted by any party to this case who was actually present at the June 7 proceeding.

{¶ 13} Other sections of the Ohio Administrative Code support the view that the term "continuance" has a particular meaning in the context of parole, and one different from that implied by the relator's argument. See, *e.g.,* Ohio Adm.Code 5120:1-1-15, 5120:1-1-18 and 5120:1-1-20. The common use of the term "continuance" among trial lawyers and judges is to denote the rescheduling or delay of a court date. Intervenor-respondent Woods argues that in the context of parole matters, "continuance" is generally accepted to mean that a parole applicant will not be released at present, but will be considered for parole again at some future

time. Woods submits that this is the meaning of "further consideration" as employed in R.C. 2967.12(C), and it is only that "further consideration" which requires the additional notice. In support he cites Ohio Adm.Code 5120:1-1-10:

"(A) The *initial hearing* * * * shall be held on or about the date when they first become eligible for parole * * *.

"(B) In any case in which parole is denied at the inmate's initial hearing, a *second hearing* shall be held as determined by the parole board * * *. If a *continuance* of six months or less is ordered, the parole board may consider granting a furlough * * * for the period of *such continuance*. * * * The *second hearing* shall not be scheduled later than five years * * *." (Emphasis added.) Relator concedes in his complaint that it was on June 17 that the full board voted to release inmate Woods on parole, without continuing that hearing for further consideration.

{¶ 14} We hold that for purposes of R.C. 2967.12(C), the hearing in which the full board considers and decides whether to grant parole is the hearing which is subject to being continued. In this case, the decision-making hearing by the full board on June 17 was the hearing subject to being continued, not the panel hearing on June 7. The June 17 hearing was not continued to a date certain for further consideration of the parole; therefore, R.C. 2967.12(C) does not apply. Relator's argument that the parole is invalid based on R.C. 2967.12(C) is not well taken.

{¶ 15} Relator also argues that the proceedings before the Parole Board were flawed and that the parole should be revoked because his May 25 letter opposing the release of inmate Woods was not in the file when the board made its decision. We note that the affidavits of the Chairman of the Parole Board and one panel member confirm that the board and the panel were well aware of the total opposition of the relator to the release of Woods. Although relator's last letter was not with the file for the full board hearing, the prior letters detailing the crime and the strenuous opposition were on file.

6

**{¶ 16}** R. C. 2967.03 conditions paroling inmates on the board, considering certain victim-impact information, if provided to the board. It does not afford that status to information submitted by a prosecuting attorney. Since the General Assembly appears to have considered what information must be considered by the Parole Board and limited it to the victim-impact information, not letters from prosecuting attorneys, we find that the failure to consider the last letter will not support the granting of a writ of mandamus to revoke Woods' parole.

II

**{¶ 17}** Relator's other basis for seeking revocation of Woods' parole is the APA's failure to comply with R.C. 2967.121.[1] That statute mandated notice of release of certain convicts as follows:

"(A) At least two weeks before any convict who is serving a sentence for committing an aggravated felony is released from confinement in any state penal or reformatory institution pursuant to a * * * parole, * * * the adult parole authority shall send notice of the release to the prosecuting attorney of the county in which the indictment of the convict was found.

"(B) The notice required by division (A) of this section may be contained in a weekly list of all aggravated felons who are scheduled for release. The notice shall contain all of the following:

"(1) The name of the convict being released;

"(2) The date of the convict's release;

"(3) The offense for the violation of which the convict was convicted and incarcerated;

"(4) The date of the convict's conviction pursuant to which he was incarcerated;

---

1. On October 6, 1994, R.C. 2967.121(A) was modified by replacing the phrase "confinement in any state penal or reformatory institution" with the phrase "confinement in any state correctional institution." This modification does not substantively affect the notice requirement of the statute.

"(5) The sentence to which the convict was sentenced for that conviction;

"(6) The length of any supervision that the convict will be under;

"(7) The name, business address, and business phone number of the convict's supervising officer;

"(8) The address at which the convict will reside."

{¶ 18} The authority admits not sending this notice as to the release of inmate Woods based on an internal policy that such notice was unnecessary for aggravated felonies committed before July 1, 1983. On July, 1, 1983, Am. Sub. S.B. No. 199 introduced "aggravated felony" as a specific though undefined term into the Revised Code, reclassifying certain offenses as aggravated felonies of the first, second, and third degree, and setting enhanced penalties for crimes so designated. R.C. 2901.02 (C) and (D). (139 Ohio Laws Part I, 523, 525.) Therefore, the authority reasoned that because aggravated felonies did not exist before July 1, 1983, notice need not be given of the release of any inmate whose aggravated felony was committed before that date.[2]

{¶ 19} We determine that the introduction of the term "aggravated felony" in the Revised Code on July 1, 1983, does not support the position taken by the APA. The authority was not justified in according such a restrictive scope to that term as used in R.C. 2967.121. As we previously noted, the term "aggravated felony" is not defined in the Revised Code; therefore, it need not be accorded any unique status because it is merely a classification of crime. Thus, we look to the purpose of the statute. R.C. 2967.121's purpose is to make the community aware when violent criminals will be paroled. The purpose, therefore, would not be served by the limitation deduced by the authority. Further, the precipitating event for the notice required in R.C. 2967.121 is the release of the convict and not the

_____

2. The authority has revised its policy and now notifies prosecutors of the release of any convict serving a sentence for an aggravated felony, regardless of the date the offense was committed, apparently based on relator's challenge of the policy in this action.

timing of the conviction nor the timing of the crime. Accordingly, we hold that the notice requirement of R.C. 2967.121 is not limited to aggravated felonies committed after July 1, 1983.

{¶ 20} Hence, respondents failed in their clear duty to notify relator, and relator had a clear right to notice under R.C. 2967.121. These circumstances plainly support the issuance of a writ requiring the authority to issue the notice. Such notice is to be sent *prior* to an inmate's release. A writ compelling notice now, therefore, will not precisely cure the breach of duty. Relator argues that the parole should be vacated, and Woods returned to Ohio from California in order to give the two-week notice prior to his re-release. The questions, however, become whether the failure to comply with R.C. 2967.121 prohibits the APA from releasing a prisoner on parole and whether there is any authority to vacate the parole.

{¶ 21} R. C. 2967.03 conditions granting parole on compliance with the notice requirements of R.C. 2967.12 and consideration of victim-impact statements. It does not prohibit the APA from releasing a prisoner on parole for failure to comply with the notice requirement of R.C. 2967.121. Therefore, although the authority had a clear legal duty to notify relator of Woods' release, relator has not demonstrated that a clear legal right to revoke, vacate, or set aside Woods' parole necessarily follows from the failure to notify. Woods, on the other hand, argues that the only authority to revoke parole lies with the APA under the circumstances where the parolee is deemed a parole violator. We, therefore, decline to issue a writ which affects Woods' parole status.

{¶ 22} We hereby issue a limited writ ordering the APA to, forthwith, complete the notice required by R.C. 2967.121 as to Woods, thereby providing the community with the requisite information about his release.

*Judgment accordingly.*

MOYER, C.J., WRIGHT and PFEIFER, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., dissent.

9

---

**DOUGLAS, J., dissenting.**

{¶ 23} I respectfully dissent. I disagree with the holding and reasoning of Part I of the majority opinion. The presentation seems, in some places, to be internally contradictory, but I comment no further on this portion of the opinion because the disposition of the second issue decides the case for me.

{¶ 24} The majority makes its point well throughout its discussion of the second issue, but comes to the wrong conclusion. The majority says "[t]he APA did not give notice to relator of Woods' release from confinement on September 2, 1994, as *required* by R.C. 2967.121." (Emphasis added.) The majority says, in discussing R.C. 2967.121, that the "statute *mandated* notice of release of certain convicts." (Emphasis added.) The majority says that "respondents *failed* in their *clear duty* to *notify relator*, and relator had a clear right to notice under R.C. 2967.121." (Emphasis added.) The majority points out that "[t]hese circumstances plainly support the issuance of a writ requiring the authority to issue the notice. Such notice is to be sent *prior* to an inmate's release. A writ compelling notice now, therefore, will not precisely cure the breach of duty." (Emphasis in original.) The majority, having said all this and more, then concludes that, "although the authority had a clear legal duty to notify relator of Woods' release, relator has not demonstrated that a clear legal right to revoke, vacate or set aside Woods' parole necessarily follows from the failure to notify."

{¶ 25} In pertinent part, R.C. 2967.121 provides:

"(A) At *least two weeks before* any convict who is serving a sentence for committing an aggravated felony is released from confinement in any state penal or reformatory institution pursuant to a * * * parole, * * * the adult parole authority *shall* send notice of the release to the prosecuting attorney of the county in which the indictment of the convict was found." (Emphasis added.)

**{¶ 26}** R.C. 2967.121(B) sets forth what the notice must contain and again the General Assembly uses the word "shall." Notwithstanding these clear and unambiguous mandates, the majority simply reads them out of the statute and, in effect, says that the required notice may be sent *after* the fact. In so deciding, the majority not only negates the salutary goals of the statute, but the majority also concludes, simply, that it makes no difference that the law says that the required notice must be given "at least two weeks before" a convict is released. Given the decision of the majority, the statute can now be ignored with impunity by those who are charged with the responsibility of complying with the statute.

**{¶ 27}** Accordingly, I would grant the requested writ. Because the majority does not do so, I must respectfully dissent.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.

————————————